**STOECO DEVELOPMENT, LTD.; Stainton–Burrell Development, Ltd.; The Shore Memorial Hospital, and The Pennington School, Plaintiffs,**

**v.**

**The DEPARTMENT OF THE ARMY CORPS OF ENGINEERS OF THE UNITED STATES OF AMERICA, Defendant.**

**and**

**UNITED STATES of America, Plaintiff,**

**v.**

**STOECO HOMES, INC.; Stoeco Development, Ltd.; Stainton–Burrell Development, Ltd.; The Shore Hospital; and The Pennington School, Defendants.**

**Civ. No. 88–0054 (WGB).**

United States District Court,
D. New Jersey.

April 14, 1992.

Michael Chertoff, U.S. Atty. by Irene Dowdy, Asst. U.S. Atty., D. N.J., Trenton, N.J., for the Army Corps of Engineers.

Levin & Hluchan by Richard M. Hluchan, Voorhees, N.J., for Stoeco, et al.

## OPINION

BASSLER, District Judge:

Plaintiffs Stoeco Development, Ltd., Stainton–Burrell Development, Ltd., the Shore Memorial Hospital and the Pennington School ("Stoeco") move for a plenary hearing on the issue of whether the lands they are developing are "wetlands" within the meaning of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and 33 C.F.R. § 328.-3(b). Defendant Department of the Army, Corps of Engineers, ("Corps") cross-moves for partial summary judgment on the issue of the Stoeco's liability for violating 33 U.S.C. § 1251 *et seq.* For the following reasons, the Corps' motion is denied; Stoeco's motion is granted to the extent that the Corps must prove the existence of wetlands at trial by a preponderance of the evidence.

## Factual History

The tract at issue is a 17–acre site in Ocean City, New Jersey, which Stoeco was developing for residential use. In 1987, the Corps made two determinations in regard to this tract. First, the Corps found the tract to be "wetlands" within the meaning of the Clean Water Act and the Code of Federal Regulations. Second, the Corps determined that Stoeco had placed fill on these wetlands without a permit, in violation of 33 U.S.C. § 1344. Having made these determinations, the Corps issued a "Cease and Desist" order to Stoeco on June 16, 1987, directing Stoeco to either remove the fill or apply for an after-the-fact permit.

Admitting that it had placed fill on the site but denying that it was wetlands, Stoeco filed an action to invalidate the "Cease and Desist" order and to obtain a declaratory judgment that the area in question was not wetlands. In response, the United States filed an enforcement action seeking removal of the fill, civil penalties and injunctive relief. These two actions were subsequently consolidated into this lawsuit.

In the summer of 1988, Stoeco moved for partial summary judgment on the limited issue of whether the Corps had authority to issue the "Cease and Desist" order. In support of this motion, Stoeco argued that because the administrative record compiled by the Corps did not support the issuance of the order, it was "arbitrary and capricious" within the meaning of 5 U.S.C. § 706(2)(A) (the Administrative Procedure Act).

The Corps cross-moved for summary judgment on three issues: its authority to issue the order under 5 U.S.C. § 706; its right to an order compelling Stoeco to remove the fill; and Stoeco's liability for monetary damages.

In response to these motions, United States District Court Judge Mitchell H. Cohen denied on November 2, 1988 Stoeco's motion for partial summary judgment and granted partial summary judgment to the Corps solely on the ground that the agency action at issue—the issuance of the "Cease and Desist" order—was not "arbitrary and

capricious". *Stoeco Development v. Department of the Army Corps of Engineers,* 701 F.Supp. 1075, 1084 (D.N.J.1988).

In accordance with Judge Cohen's order enforcing the "Cease and Desist" order, Stoeco applied for an after-the-fact fill permit on May 7, 1990. The permit application was denied by the Corps in January of 1991.

In November of 1991, Stoeco moved for a plenary hearing on the issue of whether or not the tract was wetlands. In response, the Corps asserted that Judge Cohen had already determined that the tract was wetlands, and renewed its motion for partial summary judgment.

### Discussion

The motions before this court raise three basic issues:

(1) Did Judge Cohen rule that, in an enforcement action, the Corps does not have to prove the existence of wetlands by a preponderance of the evidence? Also, if Judge Cohen made such a ruling, is this court bound by it under the "law of the case" doctrine?

(2) Assuming that no such ruling was made, must the Corps, in an enforcement action, prove the existence of wetlands by a preponderance of the evidence? Alternatively, is the trial court bound by the Corps' determination that an area is wetlands unless that determination is found to be arbitrary and capricious?

(3) Assuming that, in an enforcement action, the Corps must prove the existence of wetlands by a preponderance of the evidence, is the Corps entitled to summary judgment on the basis of the affidavits submitted by the parties?

### I. *Judge Cohen's Order of November 2, 1988*

The Corps asserts that Judge Cohen's earlier order disposes of Stoeco's motion. According to the Corps, Judge Cohen held that the Corps does not have to prove the existence of wetlands by a preponderance of the evidence. The Corps reads the order to mean that the Corps' wetlands determination in an enforcement action is only subject to judicial review under the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A).

Stoeco, on the other hand, argues that Judge Cohen did not make such a ruling. Rather, it is argued that Judge Cohen merely held that the agency action at issue in the earlier motion—the Corps' decision to issue the "Cease and Desist" order—was to be judged by the arbitrary and capricious standard. Thus Stoeco contends that Judge Cohen never reached the issue of whether or not the Corp would have to prove the "existence of wetlands" at trial by a preponderance of the evidence.

After reviewing Judge Cohen's opinion, this court concludes that Stoeco's reading is the correct one. Judge Cohen's decision did not relieve the Corps of the burden of proving the existence of wetlands by a preponderance of the evidence. Nothing in the opinion indicates that Judge Cohen even considered this issue, let alone decided it. Stoeco moved for summary judgment solely on the ground that the agency action—the issuance of the "Cease and Desist" order—was arbitrary and capricious in light of the administrative record. While the Corps' cross motion did include demands for fines and an injunction, it is evident that Judge Cohen focused exclusively on a single question: whether the issuance of the "Cease and Desist" order was arbitrary and capricious. Having concluded that it was not, Judge Cohen merely required Stoeco to comply with the Corps' order by applying, after the fact, for a § 404 permit. *Stoeco Development v. Department of the Army Corps of Engineers,* 701 F.Supp. 1075, 1080 (D.N.J.1988).

Since the key to resolving this dispute is not to be found in Judge Cohen's opinion, the court must consider the next issue.

### II. *The "Existence of Wetlands" Issue in an Enforcement Action*

■ Most of the seeming complexity in this case results from the parties' failure to frame this issue with precision. Boiling away all of the surplusage about "plenary hearings" and "standards of review," we are left with a very simple question: in an

enforcement action, does the Corps have to prove the existence of wetlands by a preponderance of the evidence?

The Corps' initial position is that it does not have such an obligation.[1] Instead, it asserts that its determination that an area is wetlands must be accepted by the court unless the determination is found to be arbitrary and capricious under 5 U.S.C. § 706(2)(A).

Stoeco acknowledges that the "arbitrary and capricious" standard is appropriate in a "citizens suit" brought under § 505(a)[2] of the Clean Water Act to challenge a wetlands determination by the Corps. But Stoeco argues that such a standard is not appropriate in an enforcement action where the Corps invokes the power of the court to impose fines and an injunction.

What is the appropriate standard of review in an enforcement action brought by the Corps is a question of first impression in the Third Circuit. There have been several enforcement actions in the Third Circuit in which the trial court, without objection from the Corps, took evidence and made a *de novo* factual finding on the existence of wetlands. *See, United States v. Ciampitti*, 583 F.Supp. 483 (D.N.J.1984), *aff'd* 772 F.2d 893 (3rd Cir.1985), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986); *United States v. Malibu Beach, Inc.*, 711 F.Supp. 1301 (D.N.J. 1989). This case is unique, however, in that the Corps resists any requirement to prove the existence of wetlands by a preponderance of the evidence in a plenary hearing.

As in all cases that involve a statutory regime, we begin our analysis with an examination of the relevant statutory provisions and regulations. The federal Clean Water Act ("CWA") prohibits the discharge of fill materials into the "waters of the United States" unless authorized by a Corps permit issued pursuant to 33 U.S.C. § 1344. "Wetlands adjacent to navigable waters" and their tributaries are included within the definition of "waters of the United States." 33 C.F.R. § 328.3(a)(3). *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133, 106 S.Ct. 455, 462, 88 L.Ed.2d 419 (1985) (upholding the inclusion of "wetlands adjacent to navigable waters" as within the scope of the Corps' regulatory authority). To be wetlands, an area must: (1) be durationally inundated or saturated; (2) be supportive of vegetation dependent on or adapted to saturated soils; and (3), contain saturated soils. 33 C.F.R. § 328.3(b) (1987)[3].

Taken together, the CWA and the accompanying regulations provide a definition of wetlands and require a permit in order to fill them. They do not, however, answer the question of who, in an enforcement action, is to determine that an area meets the definition of wetlands. For an answer to this question this court is forced to look elsewhere.

The Corps urges that the answer is to be found in the Administrative Procedure Act, 5 U.S.C. § 706, arguing that this provision relieves the Corps of any obligation to prove the existence of wetlands in an enforcement action by a preponderance of the evidence. According to the Corps, the trial court must accept its administrative determination that the area is wetlands unless it finds the Corps' determination to be arbitrary and capricious. For several reasons, this court finds this interpretation of § 706 to be erroneous.

---

**1.** The Corps later amended this position somewhat. At oral argument, the Corps conceded that the Court should make the factual determination on the "existence of wetlands" issue, but argued however, that the Court should make such a determination solely on the basis of the administrative record.

**2.** § 505(a) of the CWA provides for "citizen suits" challenging violations of the Act or challenging an administrative failure to perform a non-discretionary duty.

**3.** Wetlands include "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas." 33 C.F.R. § 328.3(b) (1987).

In the only federal case to squarely address this issue, *Leslie Salt Company v. United States*, 660 F.Supp. 183 (N.D.Cal. 1987), the Corps' reading of § 706 was expressly rejected.[4] In a case remarkably similar to this one, *Leslie* held that the Corps must carry the burden of persuasion on the "existence of wetlands" issue in an enforcement action. In reaching this conclusion, *Leslie* reasoned that there was a difference between the standard of review which governed a "citizens suit" challenging a Corps' wetlands designation and the burden of proof in an enforcement action. *Id.*, 660 F.Supp. at 186.

This court finds the reasoning in *Leslie* compelling. In a "citizens suit" brought under § 505 of the CWA, a third party challenges the agency's action and essentially asks the Court to "second-guess" agency decisions and findings. In such a situation, the arbitrary and capricious standard is entirely appropriate. The court has neither the training nor the inclination to serve as an oversight body for every agency decision. *See Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 906 (5th Cir.1983); *Golden Gate Audubon Society v. Army Corps of Engineers*, 700 F.Supp. 1549 (N.D.Cal.1988).

An enforcement action, however, is an entirely different matter. In an enforcement action, the Corps' decisions are not being questioned by a group of citizens. Rather, it is the Corps itself that is taking the initiative. In an enforcement action, the Corps seeks to invoke the power of the court in order to impose penalties and injunctive relief, including the removal of intrusive construction. In such a case, to apply an "arbitrary and capricious" standard to the Corps' assertion that certain lands are wetlands would turn the normal burden of proof at trial on its head.

The facts of this case dramatically illustrate the consequences that would result if this Court were to reject the reasoning of *Leslie*. Part of the relief sought by the Corps is the destruction of five completed homes with a total value of approximately $450,000. Three of these homes have been sold to third parties and would have to be re-purchased if the Corps prevails. The Corps also seeks the destruction of sixteen partially completed homes, with construction costs totaling more than $400,000. When one adds in the costs of site preparation, engineering costs, property taxes and legal fees, Stoeco's losses in this case could easily exceed $2,000,000. To hold that the Corps may subject a property owner to such staggering losses without having to prove the existence of wetlands by a preponderance of the evidence seems contrary to basic principles of fairness.

This court's conclusion is bolstered by the impressive list of cases in which, in an enforcement action, the trial court took evidence and decided the "existence of wetlands" issue *de novo* without objection from the Corps. *Ciampitti, supra; United States v. Rivera Torres*, 656 F.Supp. 251 (D.P.R.1987), *aff'd*, 826 F.2d 151 (1st Cir. 1987); *United States v. Larkins*, 657 F.Supp. 76 (W.D.Ky.1987), *aff'd*, 852 F.2d 189 (6th Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989); *Leslie*, 700 F.Supp. 476 (N.D.Cal. 1988), *rev'd on other grounds*, 896 F.2d 354 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991). *See also United States v. Riverside Bay View Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). This observation is not meant to imply that there is some sort of estoppel operating in this case. If the Corps has been given the right to prevail at trial without proving the existence of wetlands by a preponderance of the evidence, its failure to assert that right in previous cases does not destroy that right. It seems inconceivable, however, that so many appellate courts could review so many trial transcripts without someone arguing that a *de novo* determination of the wetlands issue by the trial court was improper.

---

**4.** *See also Leslie Salt Company v. United States*, 700 F.Supp. 476, *rev'd on other grounds*, 896 F.2d 354 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991).

The reversal was not predicated on the fact that the trial court took evidence and rendered a factual finding on the existence of wetlands.

For all of these reasons, this court finds that 5 U.S.C. § 706 does not, in an enforcement action, relieve the Corps of the obligation to prove the existence of wetlands by a preponderance of the evidence.

### III. *Propriety of Granting Summary Judgment*

Summary judgment is appropriate here only if all the probative materials in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  Fed.R.Civ.P. 56(c).  *See Hersh v. Allen Products Co.,* 789 F.2d 230, 232 (3rd Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3rd Cir.1983).

In determining whether any genuine issues of material fact remain, the court must resolve all reasonable doubts in favor of the non-moving party. *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3rd Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3rd Cir.1972).

■ That does not mean, however, that fanciful or irrelevant factual disputes will stave off summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The disputed fact must be "material."  A disputed fact is "material" only if it would affect the outcome of the suit.  *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ Further, where the moving party has made a properly supported motion for summary judgment, as the Corps has done in this case, it is incumbent upon the non-moving party to come forward with specific facts to show that there is a genuine issue of material fact.  *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.  Thus, once the moving party

has carried its burden of establishing the absence of genuine issues of material fact, the non-moving party may not rest upon allegations or denials in its pleading.  Fed. R.Civ.P. 56(e).  It must produce sufficient evidence to reasonably support a jury verdict in its favor.  *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

In this case, the Corps alleges that Stoeco violated the federal Clean Water Act by illegally filling in wetlands and seeks summary judgment as to Stoeco's liability.  In order to establish liability at trial, the Corps would have to prove three elements by preponderance of the evidence: (1) that the area contained wetlands; (2) that it was filled by Stoeco; and (3) that there was no "fill permit".  The second and third elements have been conceded by Stoeco.  The existence of the first element, however, is contested.

The Corps contends that its experts have conclusively established that the tract contains wetlands.  For this proposition, it relies primarily on the administrative record and the affidavit of Corps Biologist Michael Claffey, which conclude that all three of the wetlands characteristics mentioned previously existed on the tract in 1987.  The Corps then points out that none of Stoeco's affidavits offers any affirmative evidence that the tract does not contain these wetlands elements.  Rather, the Stoeco affidavits merely challenge Claffey's methods of gathering data as unsound.

From this, the Corps concludes that it is entitled to summary judgment.  According to the Corps, whether or not Claffey's methods were sound is immaterial to the resolution of this dispute.  The Corps maintains that in the face of Claffey's uncontradicted conclusion that the tract contains wetlands elements, Stoeco must produce evidence that affirmatively shows the non-existence of wetlands.

Stoeco denies any such obligation.  It argues that since the Corps has the burden of proving the existence of wetlands at trial, Stoeco does not have to introduce

---

**5.**  For cases granting summary judgment in enforcement actions see *Leslie,* 660 F.Supp. at 185 n. 4.

evidence that the tract is not wetlands in order to survive a motion for summary judgment. Rather, Stoeco argues that its evidence has indeed demonstrated a genuine material issue of fact: the soundness of the Corps' data collection methods and the accuracy of the government reports.

After examining the relevant submissions in some detail, this court is compelled to agree with Stoeco on this point and deny summary judgment. The flaw in the government's summary judgment argument is its assumption that the only possible "genuine issue of material fact" remaining is "the existence of wetlands." Once the government has made this assumption, it is only a short leap to its conclusion that because the government has introduced evidence of the existence of wetlands, Stoeco must respond in kind and raise evidence of the non-existence of wetlands.

Such an argument fails to comprehend the meaning of "material fact" as that term is used in Fed.R.Civ.P. 56(c). A "material fact" does not have to be one of the elements of the movant's *prima facie* case. Rather, it can be any fact that might affect the outcome of the action under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Metro Transp. Co. v. North Star Reinsurance Co.,* 912 F.2d 672 (3rd Cir.1990); *Beck v. Somerset Technologies Inc.,* 882 F.2d 993 (5th Cir.1989). Since the Corps has the burden of proving the existence of wetlands by a preponderance of the evidence, whether the Corps' data was gathered in a reliable manner is obviously "material." If the fact-finder concludes that the Corps' methodology was flawed, the Corps may be unable to meet its burden of proving that the lands in question are "wetlands."

Because the Court finds that Stoeco's affidavits demonstrate a genuine issue as to whether the Corps' data was gathered in a reliable manner, and because it finds this

issue to be material, the Corps' motion for partial summary judgment is denied.[6]

---

**6.** The Corps also argues that the six most recent affidavits submitted by Stoeco must be excluded from the court's consideration because they were submitted after the record was "closed". The court finds such a contention to be without merit. The Corps has not offered any evidence that anyone "closed" the record in this matter and thus the six most recent affidavits were considered.