262 N.J. Super. 326 (1993)
621 A.2d 29
IN THE MATTER OF STOECO DEVELOPMENT, LTD. AND STAINTON-BURRELL DEVELOPMENT, LTD.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1993.
Decided February 8, 1993.
*329 Before Judges MICHELS, BILDER and BAIME.
Ford & Flower and Levin & Hluchan, attorneys for appellants (Richard M. Hluchan, of counsel; Terrie-Anne Duda, on the brief).
*330 Robert J. Del Tufo, Attorney General, attorney for respondent (Mary C. Jacobson and John M. Van Dalen, Senior Deputy Attorneys General, of counsel; Howard Geduldig, Deputy Attorney General, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Sections 301 and 502 of the Federal Water Pollution Control Act (33 U.S.C. § 1251 through 1376), more commonly known as the Clean Water Act, prohibit the discharge of dredged or fill materials into navigable waters without first having obtained a permit from the United States Army Corps of Engineers (Corps). (33 U.S.C. §§ 1311, 1362). Under the Coastal Zone Management Act (16 U.S.C. §§ 1451 through 1464) (CZMA), an applicant for a Section 404 permit (33 U.S.C. § 1344) must obtain concurrence from the affected state that the proposed activity complies with the requirements of its federally-approved coastal zone plan. 16 U.S.C. § 1456(c)(3)(A). In the event the state finds the proposed activity inconsistent with its coastal plan, the applicant may appeal to the Secretary of Commerce who is authorized to grant the permit if the project comports with the objectives of the CZMA or is otherwise necessary in the interest of national security. Ibid. The Secretary does not review the state's finding of inconsistency, but instead focuses upon whether the project furthers paramount federal policies. 15 C.F.R. § 930.121.
Appellants Stoeco Development, Ltd. and Stainton-Burrell Development, Ltd. (Stoeco) submitted an application for a Section 404 permit to the Corps. The New Jersey Department of Environmental Protection and Energy (NJDEPE) issued a certification of inconsistency, finding that Stoeco's proposed activity conflicted with the State's Coastal Zone Management Program. The Corps denied Stoeco's application based upon the NJDEPE's certification of inconsistency. The Corps' denial was without prejudice and permitted Stoeco to reapply if and *331 when the requisite consistency certification from the NJDEPE was obtained. Stoeco filed this appeal from the NJDEPE's consistency objection.
We hold that Stoeco was not required to exhaust its federal administrative remedies before resorting to judicial action. We also conclude that Stoeco's exemption from the permit requirements of the Coastal Area Facility Review Act (N.J.S.A. 13:19-1 through -21) (CAFRA) does not render its project consistent with the State's Coastal Zone Management Program. Finally, we are satisfied that parallel federal litigation will resolve the factual issues presented and thus no State adjudicatory hearing is required.

I.
The facts and procedural history are unfortunately somewhat convoluted. Stoeco is the owner and developer of two tracts of land in Ocean City, a barrier island separating the Atlantic Ocean from the tidal estuary which lies between it and the mainland of Cape May County. Stoeco purchased the land in 1951 and immediately commenced filling operations. Following many years of on-site construction, Stoeco requested an exemption from the requirements of CAFRA, which became effective in 1972. Although Stoeco's request was initially denied, the exemption was ultimately granted on March 27, 1980. See N.J.A.C. 7D-2.1.[1]
Development of the Stoeco property proceeded uneventfully between 1951 and 1987. During this period, approximately 550 single family residences were constructed and sold. All construction came to a halt on June 16, 1987, when the Corps served a cease and desist order on Stoeco. According to the Corps, the periodic disposal of dredged material on the site ultimately eliminated direct tidal access, altering the property *332 to the extent that it now displayed the characteristics of a brackish freshwater wetland. Stoeco disputed the Corps' delineation of the site as wetlands, see 33 C.F.R. § 328.3(a)(3), and instituted an action in the United States district court in which it sought to vacate the Corps' restraining order. The Corps then filed an enforcement action which was consolidated with Stoeco's suit. On November 2, 1988, the district court granted the Corps' motion for summary judgment. Stoeco Dev. v. Dept. of the Army Corps of Engin., 701 F. Supp. 1075 (D.N.J. 1988), app. dismissed, 879 F.2d 860, 861 (3d Cir.1989). Although the court's opinion is susceptible to varying interpretations, its precise holding was that the Corps' delineation of Stoeco's property as protected wetlands was not arbitrary or capricious. Id. at 1083. The court directed Stoeco to seek an "after-the-fact" Section 404 permit. Id. at 1084.
However, the order granting the Corps' motion for summary judgment did not conclude the matter. In subsequent federal litigation, another district court judge refused to enforce the Corps' cease and desist order. He concluded that in an enforcement proceeding, the Corps was obliged to prove the existence of wetlands by a preponderance of the evidence. Stoeco Dev. v. Dept. of the Army Corps of Engin., 792 F. Supp. 339, 344 (D.N.J. 1992). The judge determined that the prior summary judgment resolved only whether the Corps' cease and desist order was arbitrary and capricious. Id. at 341. It did not "relieve the Corps of [its] obligation to prove the existence of wetlands" in an enforcement action. Id. at 344. The judge ordered that a plenary trial be conducted on that issue. Id. at 345.
While challenging the Corps' cease and desist order in the federal courts, Stoeco simultaneously applied for an "after-the-fact" Section 404 permit. Stoeco also applied to the NJDEPE for an exemption from the New Jersey Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 through -30) or alternatively for a freshwater wetlands permit and water quality certificate under the Water Quality Planning Act (N.J.S.A. 58:11A-1 *333 through -16).[2] As we noted at the outset of our opinion, a general prerequisite to obtaining a Section 404 permit is authorization from the relevant state's environmental protection agency that the proposed activity conforms with its coastal zone management requirements. 16 U.S.C. § 1456(c)(3)(A). The Corps requested such authorization in September 1990.
In December 1990, the NJDEPE concluded that Stoeco's proposal was inconsistent with the federally-approved New Jersey Coastal Zone Management Program. In a detailed seven-page opinion, the Director of the Division of Coastal Resources found that the proposed project was inconsistent with regulations governing wetlands, N.J.A.C. 7:7E-3.27, mitigation, N.J.A.C. 7:7E-3.27(h), development intensity, N.J.A.C. 7:7E-5.6, secondary impacts, N.J.A.C. 7:7E-6.3, stormwater runoff, N.J.A.C. 7:7E-8.7, and vegetation, N.J.A.C. 7:7E-8.8. The key to the Director's conclusion was that Stoeco's property constituted wetlands. The Director explained that New Jersey's coastal plan prohibited development of wetlands unless the project satisfied four conditions which were codified in the above-cited regulations. He concluded that Stoeco's project fulfilled none of the "referenced" requirements. The NJDEPE's inconsistency determination was submitted to the Corps on December 18, 1990. Shortly thereafter, the Corps denied Stoeco's application for a Section 404 permit "without prejudice." This appeal followed.
Stoeco contends that its exemption from CAFRA's permitting requirements rendered its project consistent with New Jersey's coastal zone plan as a matter of law. It also claims that the NJDEPE's consistency objection was arbitrary and capricious because the agency relied solely on the Corps' delineation of the property as wetlands. Alternatively, Stoeco argues that it is *334 entitled to an adjudicatory hearing before an administrative law judge to contest the NJDEPE determination.

II.
Before addressing these arguments, we consider the NJDEPE's contention that Stoeco's appeal should be dismissed on procedural grounds. Although phrased in a variety of ways, the NJDEPE argues that its consistency objection was not a final agency determination and that this appeal is barred because federal administrative remedies are available.
R. 2:2-3(a)(2) authorizes appeals to this court "to review final decisions or actions of any state administrative agency." The rule further provides that an appeal "shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise." Ibid. Stoeco's right to appeal thus hinges upon whether the NJDEPE's consistency objection constitutes a final agency decision and whether there is available an appropriate administrative remedy for resolution of the dispute. See N.J. Civil Service Ass'n v. State, 88 N.J. 605, 612, 443 A.2d 1070 (1982); Fair Share Housing v. Cherry Hill, 242 N.J. Super. 76, 81, 576 A.2d 24 (App.Div. 1990); Hodgdon v. Project Packaging, Inc., 214 N.J. Super. 352, 359, 519 A.2d 881 (App. Div. 1986), certif. denied, 107 N.J. 109, 526 A.2d 180 (1987); Gormley v. Lan, 181 N.J. Super. 7, 10-11, 436 A.2d 535 (App. Div. 1981), aff'd, 88 N.J. 26, 438 A.2d 519 (1987).
Although questions of finality and exhaustion of administrative remedies may differ in other contexts, here they tend to merge. We regard the NJDEPE's certification of inconsistency as final because there is no available right of review respecting its correctness before any administrative agency, state or federal. In a similar vein, we find no sound basis to require Stoeco to pursue an appeal with the Secretary of Commerce because that course would not further the interests underlying the exhaustion doctrine.
*335 We begin with the thesis that the preference for exhaustion of administrative remedies is "one of convenience, not an indispensable pre-condition." Abbott v. Burke, 100 N.J. 269, 297, 495 A.2d 376 (1985), rev'd on other grounds, 119 N.J. 287, 575 A.2d 359 (1990), quoting Swede v. City of Clifton, 22 N.J. 303, 315, 125 A.2d 865 (1956). Although resort to the courts after exhaustion of administrative remedies "is a firmly embedded judicial principle," Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 559, 401 A.2d 533 (1979), "[i]t is neither jurisdictional nor absolute," Swede v. City of Clifton, 22 N.J. at 315, 125 A.2d 865. Except in those cases where the Legislature vests exclusive primary jurisdiction in an agency, a party may seek relief in the courts. Abbott v. Burke, 100 N.J. at 297, 495 A.2d 376; Matawan Borough v. Monmouth Cty. Tax Bd., 51 N.J. 291, 296, 240 A.2d 8 (1968). In any case amenable to administrative review, the court should consider whether exhaustion of remedies will serve the interests of justice. Abbott v. Burke, 100 N.J. at 297, 495 A.2d 376.
The exhaustion doctrine seeks to vindicate several essential public policies. The first is to "ensure[] that claims will be heard ... by a body possessing expertise in the area." City of Atlantic City v. Laezza, 80 N.J. 255, 265, 403 A.2d 465 (1979). Administrative exhaustion also "allows the parties to create a factual record necessary for meaningful appellate review." Ibid. A third interest is discouragement of "piecemeal litigation." Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. at 559, 401 A.2d 533. Another policy furthered by the doctrine is eliminating resort to the courts where the agency decision might satisfy the parties and thus moot the factual or legal issue raised. City of Atlantic City v. Laezza, 80 N.J. at 265, 403 A.2d 465. It is incumbent upon the court to weigh these interests carefully "to find the proper balance." Abbott v. Burke, 100 N.J. at 298, 495 A.2d 376; see also Hinfey v. Matawan Regional Board of Education, 77 N.J. 514, 532, 391 A.2d 899 (1978); K. Davis, 4 Administrative Law Treatise, § 26:1 (1983). The procedural desideratum is the rapid, thorough *336 and impartial determination of all relevant disputed issues. See Abbott v. Burke, 100 N.J. at 297, 495 A.2d 376.
Measured against these policies, we find no reason to dismiss this appeal on exhaustion grounds. It is manifest that the Secretary of Commerce has no particular expertise in determining whether issuance of a Section 404 permit would comport with New Jersey's coastal zone plan. As we have repeatedly emphasized, the Secretary does not determine whether the proposed activity is consistent or inconsistent with the state's program. Instead, he or she assumes the consistency objection is correct and decides only whether paramount federal policies override the state's determination. So too, the parties do not have an opportunity to create a factual record before the Secretary regarding whether the proposed activity satisfies a state's environmental requirements. The facts elucidated in the context of the Secretary's review pertain to federal environmental policies and objectives. Moreover, resort to the federal administrative remedy does not necessarily further the policy of discouraging piecemeal litigation. A ruling by the Secretary against the applicant, which is the result reached in most cases,[3] returns the matter to the state administrative or judicial forum. This merely delays or prevents adjudication of the essential issues.[4] The only policy served by requiring an applicant to resort to the federal administrative remedy is that a favorable decision by the Secretary would provide the property owner with the relief it seeks in the judicial action. As we *337 have pointed out, however, the likelihood of a favorable federal decision is minimal. In the vast majority of cases, federal review will not obviate the need of an applicant to resort to the courts.
The result we reach is fully consistent with the objectives of the CZMA and the Clean Water Act. Land use planning has traditionally been considered a matter of state and local concern. Congress has not been hospitable to demands that it preempt the field. See Biderman v. Morton, 497 F.2d 1141, 1144 (2d Cir.1974); B.H. Holmes, "Federal Participation in Land Use Decisionmaking at the Water's Edge  Floodplains and Wetlands," 13 Nat. Resources Law 351, 352 (1980-81). Although the CZMA is designed in part to incorporate national environmental policies into land use decisions, "the approach is one of encouragement, rather than mandate." Cape May Greene, Inc. v. Warren, 698 F.2d 179, 187 (3d Cir.1983). The legislative history of the CZMA graphically discloses the intent to advance state and local environmental initiatives.
[The Act] has as its main purpose the encouragement and assistance of States in preparing and implementing management programs to preserve, protect, develop and whenever possible restore the resources of the coastal zone of the United States. * * * There is no attempt to diminish state authority through federal preemption. The intent of this legislation is to enhance state authority by encouraging and assisting the states to assume planning and regulatory powers over their coastal zones. [Sen.Rep. No. 753, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 4776].
State participation in the federal program is voluntary. Funding is provided for the preparation and implementation of state plans which meet federal approval. These plans must incorporate designated national policy interests. However, it bears repeating that the states administer the program and "make the development and local use decisions." Cape May Greene, Inc. v. Warren, 698 F.2d at 187. Neither the CZMA nor the Clean Water Act constitutes a mandate to pursue national environmental policies to the exclusion of the states. Although Congress intended to elevate national environmental and security concerns in certain instances, the clear legislative *338 preference was to provide policies initiated at the state level. Consistency to the maximum extent practicable with the state's coastal zone plan is at the heart of the statutory scheme. Id. at 191.
Against this backdrop, we are satisfied that judicial review of the NJDEPE's consistency objection best advances both federal and state objectives. Our decision places primary emphasis on insuring meaningful review regarding whether a proposed project comports with New Jersey's coastal zone plan. By focusing attention on that inquiry, we believe there will be greater impetus given to assuring that both the rights of the property owner and the State's environmental concerns are protected.
We recognize that the issue is debatable and that at least one other state has reached the opposite conclusion. In Acme Fill Corporation v. San Francisco Bay Conserv., 187 Cal. App.3d 1056, 232 Cal. Rptr. 348 (App.Ct. 1986), the California Court of Appeals held that because the applicant could potentially obtain the functional equivalent of a judicial remedy by appealing to the Secretary of Commerce, the case was subject to dismissal. Id. at 1065, 232 Cal. Rptr. at 352. The decision rests on the need to marshall scarce judicial resources. While we too recognize the objective of "lighten[ing] the burden of overworked courts in cases where administrative remedies are available," ibid., we are convinced that the policies we have identified are best served by permitting judicial review of the State's consistency objection.

III.
We now address Stoeco's arguments. Initially, we conclude that mere exemption from CAFRA's permitting requirements does not prevent the NJDEPE from finding a proposed activity inconsistent with New Jersey's Coastal Zone Management Program. Exemption and consistency are not equivalent.
*339 In 1973, our Legislature enacted CAFRA in an attempt to address the serious environmental degradation of New Jersey's coastal zone. See N.J.S.A. 13:19-2. While recognizing the need to advance important environmental concerns, the Legislature nevertheless acknowledged the legitimate economic interests of the inhabitants of the coastal area. The articulated legislative objective was to strike a balance between protection of the environment and reasonable and appropriate economic development. The legislation was thus said:
to encourage the development of compatible land uses in order to improve the overall economic position of the inhabitants of that area within the framework of a comprehensive environmental design strategy which preserves the most ecologically sensitive and fragile area from inappropriate development and provides adequate environmental safeguards for the construction of any facilities in the coastal area. [Ibid.]
In furtherance of these goals, N.J.S.A. 13:19-16 directs the Commissioner of the NJDEPE to develop an environmental design strategy, including "a delineation of various areas appropriate for the development of residential and industrial facilities of various types...." The NJDEPE is authorized "to adopt, amend and repeal rules and regulations to effectuate the purposes of this act." N.J.S.A. 13:19-17. The statutory grant is to be "liberally" construed. N.J.S.A. 13:19-20. CAFRA's provisions are not to be regarded "in derogation of any powers now existing," but rather are to be considered "as supplemental and in addition to [authority] conferred by other laws...." N.J.S.A. 13:19-19.
Although CAFRA undoubtedly represents the primary basis for adoption of a coastal zone program, other statutes are also implicated. For example, N.J.S.A. 13:1D-9 empowers the NJDEPE to "formulate comprehensive policies for the conservation of natural resources." N.J.S.A. 13:1D-9(f) directs the NJDEPE to "[p]repare, administer and supervise ... regional and local programs of conservation and environmental protection." N.J.S.A. 13:1D-9(d) and (f) require state cooperation with the federal government regarding environmental concerns. The Wetlands Act (N.J.S.A. 13:9A-1 through -10) empowers the *340 NJDEPE to regulate the "estuarine zone" in order to preserve the "ecological balance." N.J.S.A. 13:9A-1. The Freshwater Wetlands Protection Act (N.J.S.A. 13:9B-1 through -30) directs the NJDEPE "to protect coastal wetlands" and "inland waterways." N.J.S.A. 13:9B-2. The Waterfront Development Act (N.J.S.A. 12:5-1 through -11) empowers the NJDEPE to review "[a]ll plans for the development of any water-front." N.J.S.A. 12:5-3.
To a greater or lesser extent, all of these concerns are represented in New Jersey's coastal zone plan. In August 1980, the Governor submitted the final New Jersey Coastal Zone Management Program to the Secretary of Commerce. The Program was approved by the Secretary in September 1980. See 45 Fed.Reg. 71640 (Oct. 29, 1990); 43 Fed.Reg. 51829 (Nov. 7, 1978); N.J.A.C. 7:7E-1.1(b). As pointed out by the Attorney General, the Program is much broader than CAFRA. It is designed to further not only CAFRA's objectives, but other environmental policies as well. CAFRA represents only one aspect of the Program. Regulations adopted by the NJDEPE to implement the Program include five "categories" of administrative actions and decisions. Coastal permits, which include CAFRA, constitute one "category." N.J.A.C. 7:7E-1.2(a)(1). Consistency determinations form a separate "category." N.J.A.C. 7:7E-1.2(a)(3). Additional "categories" include "Division Management," N.J.A.C. 7:7E-1.2(a)(2), "financial assistance," N.J.A.C. 7:7E-1.2(a)(4), and "planning actions," N.J.A.C. 7:7E-1.2(a)(6). The point to be stressed is that the Program provides a framework for a broad array of environmental decisions.
Viewed in this context, Stoeco's exemption from CAFRA's permit requirements does not render the proposed activity consistent with New Jersey's coastal zone plan. The text of the NJDEPE's consistency objection reflects this basic reality, because it rests on environmental concerns beyond those protected by CAFRA. In sum, we hold that Stoeco's exemption did *341 not, as a matter of law, render its dredging and filling activities consistent with the Program.

IV.
Stoeco contends that the NJDEPE acted arbitrarily because it relied upon the Corps' delineation of the property as wetlands. The Corps' investigation is described at length in Stoeco Dev. v. Dept. of the Army Corps of Engin., 701 F. Supp. at 1081-83. Apparently, Stoeco was afforded the opportunity to submit information to the Corps in opposition to its assertion of jurisdiction. Id. at 1081. However, Stoeco contended in the federal litigation that it was not given a fair hearing or any meaningful review of the Corps' wetlands determination. Id. at 1082. As we mentioned previously, although the district court found that the Corps' cease and desist order was not arbitrary and capricious, id. at 1082, it subsequently determined that a plenary trial was necessary to determine whether Stoeco's property consisted of wetlands. Under the district court's most recent decision in this matter, the Corps will bear the burden of proof by a preponderance of the evidence. See also Leslie Salt Co. v. United States, 660 F. Supp. 183 (N.D.Cal. 1987). That federal trial has not yet been conducted. We have been told, however, that the trial on the wetlands issue is imminent.
Under these unusual circumstances, we have no occasion to determine whether the NJDEPE's reliance on the Corps' wetlands delineation was arbitrary. We also need not resolve the question whether a consistency determination requires an adjudicatory hearing before the NJDEPE or an administrative law judge. If Stoeco prevails in the federal litigation, all issues pertaining to the NJDEPE's consistency objection will become moot. In such a case, Stoeco will not be required to obtain a Section 404 permit and there will be no need for a State certification of consistency. If the Corps prevails and the property is found to be wetlands, the federal judgment will serve as an estoppel with regard to the nature of Stoeco's *342 property. See United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977); Mazzilli v. Accident, etc., Casualty Ins. Co., etc., 26 N.J. 307, 314, 139 A.2d 741 (1958); City of Hackensack v. Winner, 162 N.J. Super. 1, 28, 392 A.2d 187 (App.Div. 1978), mod. on other grounds, 82 N.J. 1, 410 A.2d 1146 (1980). Beyond the doctrine of collateral estoppel, considerations of comity would require the NJDEPE to accept the federal court's finding. See Hill Manor Apartments v. Brome, 164 N.J. Super. 295, 308, 395 A.2d 1307 (Cty.Ct. 1978). We note in that respect that the federal and state definitions of wetlands are identical. See 33 C.F.R. § 328.3(a)(3); N.J.A.C. 7:7E-3.27(a). If the property is wetlands for federal purposes then it is also wetlands for State purposes. Once a finding is made by the federal court that the Corps' delineation is correct, it follows that Stoeco's filling operations are repugnant to New Jersey's Coastal Zone Management Program because it is conceded such operations are violative of the wetlands regulations cited in the NJDEPE's consistency objection.
We are confident that final resolution of the federal litigation will be wholly dispositive of the State issues raised. Stoeco should not be required to litigate what is essentially the same factual question in both the federal and State forums. The interests of justice thus militate in favor of dismissing Stoeco's appeal.
Dismissed.
NOTES
[1] On March 12, 1984, this subchapter expired pursuant to Executive Order 66 (1978). Coastal permit rules are now found at N.J.A.C. 7:7.
[2] The NJDEPE denied Stoeco's wetland permit applications in December 1991. The matter was then referred by the agency to the Office of Administrative Law for an adjudicatory hearing. Apparently, the matter is still pending before an administrative law judge.
[3] We are advised that the Secretary of Commerce has entertained only 24 applications for review since enactment of the CZMA. Almost half of these applications related to permit requests for proposed activities on the outer continental shelf. Of the remaining 13, the Secretary overrode the state inconsistency determination only twice. In total, the Secretary has exercised its authority to override state objections a mere eight times.
[4] If an appeal from a consistency objection were to be filed after review by the Secretary of Commerce, a cogent argument could be made that the property owner failed to pursue his or her right to judicial review in a timely fashion. See R. 2:4-1(b).