IN THE MATTER OF APPLICATION OF THE CITY AFFAIRS COMMITTEE OF JERSEY CITY, A CORPORATION, FOR WRIT OF CERTIORARI.

Argued March 1, 1943—Decided March 5, 1943.

For the applicant, *Raymond Chasan* (*John Warren*, of counsel).

*Contra, Charles A. Rooney,* corporation counsel; *Charles Hershenstein* and *Theodore C. Baer* (*John F. Lynch*, of counsel).

BROGAN, CHIEF JUSTICE. (At chambers.) This is an application for a writ of *certiorari* to review the resolution of the Board of Commissioners of the City of Jersey City under date of February 24th, 1943, adopting the local municipal budget for the year 1943. It appears without dispute that the local governing body approved the budget on February 5th, 1943; that thereafter the same was advertised and transmitted to the office of the Commissioner of Local Government (40:2-7) who examined, approved and returned the same to the local municipal authorities on February 9th, 1943 (40:2-52 and 53).

The law provides that any person aggrieved by the determination of the Commissioner (Mr. Walter R. Darby) may apply to the Local Government Board (a state department) for a review and a re-determination within ten days (52:27a-24). The petitioner had such review and the Board, under date of February 23d, 1943, determined that the grounds for the appeal (*infra*) were not well founded and the determination of the Commissioner of Local Government was approved.

The present application rests on the affidavit of Mr. James E. Pope, chairman of the City Affairs Committee of Jersey City, who says the budget tax rate is arrived at on the basis of the total ratables reported by the chief assessor of Jersey City to the Hudson County Board of Taxation and that the governing body has failed to consider the "equalization, revision and correction of its assessments" by the County Tax Board; that if it had the result would be a higher tax rate; that the city has a surplus cash revenue of $7,939,978.94 which is unencumbered and available for appropriation in the said budget; that the governing body has appropriated only $2,350,000 of this surplus and proposes to retain the balance as a free surplus; that the appropriation of the surplus would reduce the 1943 tax rate; that the budget violates the Local Budget Act (40:2-1, *et seq.*) and that it impinges upon certain rights of the taxpayer, guaranteed by the Constitution of New Jersey.

Out of the foregoing two points are made—(1) that the tax rate should be increased in anticipation of revisions of

the assessments on real property now being undertaken by the county board of taxation, and (2) that the entire surplus mentioned should be appropriated in the 1943 budget in reduction of the amount to be raised by taxation.

Taking these points in order, it is manifest that the budget contemplates the contingency of reduction in the assessments as returned by the chief assessor to the county board of taxation. This is clear from a reading of the ninth paragraph of the affidavit supporting this application, wherein appears an excerpt from the "Explanatory Statement" accompanying the budget as follows: "The rate will also vary in accordance with any revision of the city's valuations made by the Hudson County Board of Taxation." The budget as adopted also states that the final tax rate may vary when the actual amount of state and county taxes for 1943 are finally apportioned.

This first point then has no substance because it seeks to have the local governing body anticipate an action of the county board which has not yet been concluded and for the further reason that the petitioner treats the tentative tax rate as final. when manifestly it is not final but subject to be changed by any revision of the assessments made by the county tax board and by apportioned state and county taxes as well.

Turning to the second point of the applicant's argument—that the entire cash on hand should be appropriated in the 1943 budget—counsel for the municipality contends that there is no such requirement in the pertinent statute and that the local budget statute not only carries no such mandate but rather that the intendment and the plain spirit of the act leaves the matter of appropriation of surplus revenue to the judgment and discretion of the local governing body. This question was considered by the Local Government Board, sitting in review of Commissioner Darby's approval of the budget. That board is thoroughly experienced in matters of this character and its finding and the views expressed, in arriving at it, are entitled to much weight. The Commissioners filed a concise and lucid exposition of their opinion on the merits of the question. They pointed out that the applicant relied on our statute *N. J. S. A.* 40:2-13 and

40:2-16 for his assertion that all surplus revenue should be appropriated for 1943. They held that the former section of the statute carries the heading "Form and Content" (of municipal budgets) and that the reference was to the "form" budgets shall take and what they shall contain and that "it was not intended to prescribe the amounts of specific items that are to be contained in budgets as anticipated revenues but relates to what the budget shall contain as to the sources of these anticipated items," and that the latter section of the statute made provision that the municipality "shall not include in any budget surplus revenue which shall exceed the amount of surplus revenue held in cash at the beginning of the budget year less any outstanding commitments or obligations against such cash, unless the state auditor, now the Commissioner of Local Government, shall give his prior written consent thereto." The opinion pointed out, rather graphically, that the legislature has fixed a "ceiling" on the amount of surplus revenue that might be included in a budget, but that the "floor" of such amount was left to the discretion of the Governing body "to be exercised in the light of existing as well as probable future conditions." They stated that they could find no statute which deprived the local governing body of its discretion to use "such an amount of cash surplus as it may be deemed desirable and advisable." No statute has been cited on this application which carries the obligation to include all surplus revenue in the budget and in a minute examination of the statute we have found none. In matters within the discretion of the municipal officers this court will not substitute its judgment for that of those to whom the subject-matter under consideration has been entrusted by law. The board also pointed out in its opinion that the retention of surplus revenue or cash reserves should be encouraged and that it had so stated in its report published in March, 1942, and had urged municipal officials "to accumulate cash reserves, whenever possible;" their opinion also made reference to the fact that this policy had been recommended by Governor Edison in his budget message of January 18th, 1943.

A municipal budget is a very important matter. How is

this question treated by the hundreds of municipalities of our state? Courts are disposed to accept contemporaneous construction exhibited in usage and practice under like circumstances. *Burlington* v. *Martin,* 129 *N. J. L.* 92; *Sargeant Bros.* v. *Brancati,* 107 *Id.* 84; *In re Hudson County,* 106 *Id.* 62, 75. An exhibit in this case, produced by counsel for the municipality (copy of a public record) shows that some municipalities, in making up their budget, use all surplus revenue, some part of it and others none of it.

But, prescinding from all that and returning to the law of the case, the statute on the subject is not one, in our judgment, that requires construction. Construction is needed when the meaning of the statute is doubtful. Nothing is to be found in the statute that supports the main reason upon which this application is based, namely, that the surplus revenue on hand at the end of the fiscal year should be appropriated for the ensuing year's budget, *in toto.* But rather many of the statutory provisions support the opposite view. For instance, *N. J. S. A.* 40:2-15 classifies anticipated revenues, saying they "shall be classified as surplus revenue appropriated," &c. It cannot be disputed but that the words "surplus revenue" which has been "appropriated" connotes and recognizes the likelihood of surplus revenue unappropriated. If it were otherwise, the statute would read: "The anticipated revenues shall be classified as 'all surplus revenue,'" or some such phrase (compare 40:2-27 and 40:2-28, subdivision a). The former provision makes it clear beyond dispute that a surplus revenue fund may have been established and available. This particular section refers to municipalities operating on a full cash basis. Jersey City has been so operating since 1936. The latter section of the statute refers to surplus revenues appropriated of which mention has already been made.

Continuing: our statute 40:2-17.1 provides that surplus in a sinking fund, if released by the Sinking Fund Commission and approved by the Commissioner of Municipal Accounts, may be used, in whole or in part, as an anticipated miscellaneous revenue in the budget. This language is susceptible of no other meaning but that the statutory intent was to

retain flexibility in a municipal financial system and that surpluses may presently be used in whole or in part or reserved intact for the future.

It is pertinent to compare 40:2-24 with the foregoing. This section, while it relates to municipal operation of a utility or enterprise, provides that the surpluses from such operation *"may* be included in the budget," &c. There is no requirement that it shall be included and this is consistent with the whole legislative philosophy on the subject. In this connection compare also our statute 40:2-53. Among other things, this section of our law directly provides that the Commissioner of Local Government, in refusing to approve a budget, shall not substitute his discretion with respect to the amount of an appropriation where such an amount is not made mandatory because of the requirements of the law. By indirection or implication it is recognized that the amounts appropriated are to be settled by the discretion of the governing body.

Thus it seems reasonably clear that the refusal of the local governing body to include the entire surplus in the budget is not only not contrary to the provisions of the local Budget Act, *supra,* but that its action with regard to surplus is in accord with the several provisions of the statute to which reference has been made.

It is stated in the petitioner's affidavit that the non-inclusion of the surplus in its entirety "sanctions the levying of taxes for a period in excess of the proposed fiscal year in violation of the statute, * * *." It compels the petitioner and others "to bear more than their just and legal share of taxes, * * * it is based on unsound economic and accounting principles and practice, * * * the budget will result in a fictitious and excessive tax rate · * * *," &c. No authority whatever is cited for these statements. The statute does not require that· to be done which the petitioner thinks should be done. But, on the contrary, the matter is one for the discretion of the municipal body.

The argument that the budget as drawn will compel the petitioner and others, illegally as it is said, to pay more this year in taxation than they would be required to pay if the

surplus revenue in 'its entirety were appropriated for 1943, rests on this fallacy, that is, a complete assumption that the duty thus to appropriate the available surplus is being avoided. There is no such duty and the premises upon which the argument rests completely begs the question.

On the part of the local governing body it is said that this application for a writ of *certiorari* should not be entertained because of faulty procedure. By that it is meant that the application for *certiorari* or for a judicial review should be for a review of the judgment or determination of the Local Governing Board and not an attack upon the resolution of the governing body adopting the budget; that up to the instant application the proceeding had been in accordance with the statute, namely, objection or appeal to the Commissioner of Local Government and then review by the Local Government Board and that this procedure should have been carried through by application to this court to review the last judgment or determination. This question has received no consideration because it is desirable that the matter be disposed of on the merits and promptly in order that the aggrieved party may take whatever subsequent action he may deem advisable. No opinion therefore is expressed on the adjective side of the question.

By the last paragraph of the affidavit it is charged that the petitioner is being deprived of its right to possess and protect its property in the municipality; that its private property is being taken for public use without just compensation; that the rights and privileges enjoyed by petitioner in common with the rest of the citizens are being impaired; that it results in the proposed budget becoming a gift to future owners of its property in future years because the surplus now retained will be seized for their use at the expense of the present owner and that the due process and equal protection guaranteed by the United States Constitution are being violated. These questions would be interesting to explore further were it not for the proposition that each and every of these statements is based upon the erroneous and fallacious assumption that the statute under which the budget is made up requires the governing body to appropriate all

available surplus money for use in the ensuing year, and this is not the law.

The application for *certiorari* is denied.