80 N.J. 255 (1979)
403 A.2d 465
CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, POLICEMEN'S BENEVOLENT ASSOCIATION LOCAL #24; INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS LOCAL #198; AND TEAMSTERS LOCAL #331, PLAINTIFFS-RESPONDENTS,
v.
JOHN F. LAEZZA, DIRECTOR, DIVISION OF LOCAL GOVERNMENT SERVICES, AND THE LOCAL FINANCE BOARD, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued April 2, 1979.
Decided June 12, 1979.
*259 Mr. Stephen Skillman, Assistant Attorney General, argued the cause for appellants (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Skillman, of counsel; Mr. Daniel P. Reynolds, Deputy Attorney General, on the brief).
Mr. Emanuel L. Levin argued the cause for respondent City of Atlantic City (Mr. Levin; attorney; Mr. Matthew H. Powals, Assistant City Solicitor, on the brief).
Mr. John M. Donnelly argued the cause for respondent International Association of Fire Fighters Local #198 (Messrs. Sterns, Herbert & Weinroth, attorneys).
A joint brief was submitted on behalf of amici curiae County of Hudson and League of Municipalities and New Jersey Institute of Municipal Attorneys (Mr. Harold Krieger, Hudson County Counsel, attorney; Mr. Francis X. Hayes, attorney for New Jersey League of Municipalities and New Jersey Institute of Municipal Attorneys; Mr. Hayes, of counsel and on the brief for County of Hudson; Mr. J. Albert Mastro of counsel for New Jersey Institute of Municipal Attorneys).
A brief was submitted on behalf of amicus curiae Edgewater PBA and Fort Lee PBA (Messrs. Osterweil, Wind & Loccke, attorneys; Mr. Alfred G. Osterweil, of counsel and on the brief).
*260 A brief was submitted on behalf of amicus curiae Firemen's Mutual Benevolent Association Local #14. (Messrs. Rinaldo & Rinaldo, attorneys; Mr. Anthony D. Rinaldo, Jr., of counsel and on the brief).
The opinion of the court was delivered by PASHMAN, J.
As in New Jersey State Policemen's Benevolent Ass'n, Local 29 v. Town of Irvington, 80 N.J. 271 (1979) (Irvington PBA), decided this day, we are here called upon to determine whether the costs incurred by a municipality in funding particular arbitral awards must be taken into account when determining whether the municipality's total budgetary appropriations have exceeded the fiscal limits imposed by the Local Government Cap Law, N.J.S.A. 40A:4-45.1 et seq. We must also delineate the procedural steps that should be followed by municipal officials seeking to challenge interpretations of the Cap Law rendered by the Director of the Division of Local Finance or the Local Finance Board.
On April 15, 1978, the Board of Commissioners of plaintiff City of Atlantic City adopted its budget for fiscal year 1978. Reflected in the final appropriations figure were anticipated costs totalling $17,912,441.76 for the funding of municipal employee wages and salaries  an amount which represented approximately a $200,000 increase over the sum allocated to payroll costs in 1977. As adopted, the budget's final line of appropriations did not exceed by more than 5% the City's overall 1977 expenditures and hence was in keeping with the fiscal constraints imposed upon the municipality by the Local Government Cap Law, N.J.S.A. 40A:4-45.1 et seq. See N.J.S.A. 40A:4-45.2; Irvington PBA, supra, 80 N.J. at 281-282.
At the time of the budget's adoption, the City had not yet concluded negotiations with four unions as to the terms of 1978 collective agreement for various segments of its work force. These unions  Local 198, International Association of Fire Fighters (IAFF); Local 24, New Jersey State Policemen's Benevolent Association (PBA); Local 2303, *261 American Federation of State, County and Municipal Employees (AFSCME); and Local 331, International Brotherhood of Teamsters (Teamsters)  were, respectively, the majority representatives of the City's firefighting, police, blue collar and white collar employees.
By the time the budget had been approved by defendant John Laezza, Director of the Division of Local Finance, see N.J.S.A. 40A:4-10; 40A:4-79, each of the four contract disputes had been submitted to binding interest arbitration. Arbitration of the City's negotiation impasses with the IAFF and PBA was mandated by the compulsory arbitration provisions of the Employer-Employee Relations Act, N.J.S.A. 34:13A-14 et seq. See Irvington PBA, supra, 80 N.J. at 285-287. The Teamsters and AFSCME disputes were voluntarily submitted to binding arbitration by agreement of the parties, see N.J.S.A. 34:13A-7. See Irvington PBA, supra, 80 N.J. at 284.
Arbitral decisions in the IAFF, PBA, AFSCME and Teamsters proceedings were issued, respectively, on May 29, July 6, July 10, and August 16, 1978. According to City officials, implementation of these awards would cause the 1978 budget to exceed by $1,702,114.34 the maximum final appropriations figure allowable under the Cap Law, see N.J.S.A. 40A:4-45.2. These officials also concluded that were expenditures reduced in other areas in order that the overall budget remain within the Cap Law's 5% ceiling, the City's residents would suffer extreme hardship.
The municipality at first sought to cope with this fiscal dilemma by adopting an ordinance authorizing an "emergency" appropriation. See N.J.S.A. 40A:4-46 et seq.; Irvington PBA, supra, 80 N.J. at 298. Since this appropriation, when aggregated with previous 1978 emergency expenditures, exceeded 3% of the overall 1978 budget, its implementation required the approval of the Director of the Division of Local Finance. See N.J.S.A. 40A:4-49.
On October 17, 1978, the Director notified the City that this approval would not be forthcoming. The municipality *262 therefore requested a hearing before the Local Finance Board in order to challenge the Director's determination. See N.J.S.A. 52:27BB-15. On October 23, representatives of both the municipality and its resident-taxpayers appeared before the Board and expressed conflicting views as to the necessity of an emergency appropriation. At the close of the day's proceedings, the Board concluded that it could not definitively resolve the dispute without a scrutiny of various documents relating to the City's fiscal condition. It therefore adjourned the matter until November 8, 1978, at which time City officials were ordered to produce the required data.
According to Atlantic City's Accountant and Comptroller, the City could not "afford" to wait until November 8 for approval of its emergency ordinance. Absent immediate ability to expend the monies there appropriated, "a massive termination of over one-half (1/2) of the City's work force would be mandated." The City therefore abandoned its appeal before the Board, and on October 23 the City, PBA, IAFF and Teamsters filed the present suit in Superior Court against both the Director and the Board. Plaintiffs sought a declaratory judgment that the costs to be incurred in implementing the four arbitration awards constituted "[e]xpenditures mandated after the effective date of [the Cap Law] pursuant to State * * * law," N.J.S.A. 40A: 4-45.3(g), and hence need not be considered by the municipality when determining whether its 1978 overall budgetary appropriations exceeded Cap Law limitations. Plaintiffs also requested an injunction restraining defendants from interfering with the City's efforts to appropriate sufficient funds to defray these costs.
Three days later, on October 26, the trial judge rendered his decision. He ruled that the costs to be incurred in funding the arbitral awards were indeed expenditures that should be excluded from the municipality's Cap Law calculations. He did not, however, issue an injunction, as he was of the view that defendants lacked "jurisdiction" to interfere with the City's funding of the awards even should they *263 desire to do so. Finally, although none of the parties had so requested, he confirmed each of the four arbitral decisions Formal judgment embodying the trial judge's rulings was entered on November 13, 1978.
One week later, defendants filed a notice of appeal to the Appellate Division. While the matter was pending unheard before the appellate judges, we directly certified the case to this Court.

I

A
Prior to reaching the merits, we feel constrained to comment upon the procedural aspects of the present controversy. The Local Budget Law, N.J.S.A. 40A:4-1 et seq., assigns to the local governing body primary responsibility for allocating available resources among the various services which it chooses to provide to its inhabitants. See Irvington PBA, supra, 80 N.J. at 296. However, no budget or amendment thereto can be adopted by the municipality unless the Director of the Division of Local Finance has previously certified his approval thereof. N.J.S.A. 40A:4-10. The Director's approval is also required for "emergency" appropriations sought by municipalities subsequent to the budget's adoption if these appropriations, when aggregated with previous emergency expenditures during the same fiscal year, exceed 3% of the total annual budget. N.J.S.A. 40A:4-49. The Director has been delegated the authority to determine whether an "emergency" does indeed exist, see N.J.S.A. 40A:4-49(d), and whether the proposed appropriation is "necessary" in light of that emergency, see N.J.S.A. 40A:4-49(e).
Should the Director fail to approve either the municipality's budget or a requested emergency appropriation, local officials may seek to overturn his determination by appeal to the Local Finance Board. N.J.S.A. 52:27BB-15. Judicial review of the Board's decision is available by *264 appeal as of right to the Appellate Division. N.J.S.A. 52:27BB-20; R. 2:2-3(a)(2); see Nolan v. Fitzpatrick, 9 N.J. 477, 486-487 (1952); Jamouneau v. Board of Comm'rs of Newark, 132 N.J.L. 117, 118-120 (Sup. Ct. 1944).
In the present case, the City required the Director's approval in order to appropriate sufficient "emergency" funds to defray the costs of the four arbitral awards. It properly requested that approval and then appealed the Director's determination to the Board. However, instead of awaiting the Board's final decision, plaintiffs impermissibly "short-circuited" the statutorily prescribed procedures by instituting suit in Superior Court.
It is true that plaintiffs did not seek a judicial declaration as to whether an emergency did indeed exist. Rather, a purely legal issue was presented for adjudication  i.e., whether the costs to be incurred in implementing the arbitral awards constituted "[e]xpenditures mandated after the effective date of [the Cap Law] pursuant to State * * * law," N.J.S.A. 40A:4-45.3(g). Nonetheless, resort should not have been had to the courts until all administrative remedies had been exhausted.
Director or Board approval of emergency expenditures is not required solely in situations in which a municipality must defray costs which are subject to the Cap Law's 5% ceiling. N.J.S.A. 40A:4-49, by its plain wording, requires such approval regardless of the Cap Law status of the requested appropriations. In arriving at their determinations, the Director and Board will of necessity consider a myriad of factors, including whether the proposed emergency expenditure is encompassed within one of the Cap Law's exceptions, see N.J.S.A. 40A:4-45.3(a)-(j). As a result, purely legal issues, such as that raised in the present case, will at times arise. This circumstance, however, does not give a municipality the license to fragment the statutorily established procedures merely because it disagrees with the Board's resolution of such an issue. Rather, the *265 municipality must await the Board's final decision disposing of the entire matter, and only then seek judicial review. See Jamouneau, supra, 132 N.J.L. at 118-120. Cf. Garrow v. Elizabeth General Hospital, 79 N.J. 549, 558-560 (1979).[1]

B
Despite plaintiffs' failure to follow the proper procedure, we have concluded that a remand to the Board concerning the narrow issue here presented would serve no salutary purpose. Hence, we will decide the question posed at the present juncture.
We have recently noted that the doctrine of exhaustion of administrative remedies serves three primary goals: (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts. See, e.g., Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, 79 N.J. 311, 317 (1979); Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-388 (1979).
Each of these goals has been satisfied. Although the Board has not yet issued a final decision in this matter, both it and the Director have participated in this case as defendants. Consequently, we have not been deprived of the expertise which they possess regarding interpretations of the Cap Law. Since the issue here presented is purely legal in nature, we have no need for a "factual record" in order to meaningfully review the trial court's decision. Finally, the question *266 posed is one of major public importance. A remand will therefore not obviate the need for us to ultimately decide this issue at some time in the future. Under these circumstances, we have not hesitated in the past to rule on the merits despite a plaintiff's failure to await the Board's final decision. See Nolan, supra, 9 N.J. at 484-487; Blasi v. Ehret, 118 N.J. Super. 501 (App. Div. 1972); In re City Affairs Committee of Jersey City, 129 N.J.L. 589 (Sup. Ct. 1943).

II
The first issue presented is whether the costs to be incurred to fund the PBA and IAFF compulsory arbitral awards constitute "[e]xpenditures mandated after the effective date of [the Cap Law] pursuant to State * * * law," N.J.S.A. 40A:4-45.3(g). For the reasons detailed in Irvington PBA, supra, decided this day, we hold that they do not. See 80 N.J. at 284-292. Consequently, these costs must be taken into account by municipal officials when determining whether Atlantic City's overall 1978 budgetary appropriations have exceeded the Cap Law's 5% ceiling, see N.J.S.A. 40A:4-45.2.

III
We must next decide whether the expenditures required in order to implement the Teamsters and AFSCME awards fall within the ambit of N.J.S.A. 40A:4-45.3(g). Unlike the award at issue in Irvington PBA, supra, the AFSCME and Teamsters awards were the product of voluntary arbitration, see N.J.S.A. 34:13A-7. No statutory scheme compelled the parties to opt for this method of resolving their negotiation impasses. Nonetheless, the reasoning which led to our decision in Irvington PBA applies with equal force in the present context.
As we emphasized in that decision, N.J.S.A. 40A:4-45.3(g) was enacted in order to exclude from a municipality's *267 Cap computations the costs incurred to fund "new services or activities undertaken for the first time subsequent to the Cap Law's effective date." 80 N.J. at 283. Absent exclusion from the Cap, such expenditures "might consume the whole of or more than the allowable yearly increment in a municipality's budget, and thereby compel cutbacks in other areas in order that financing be available for activities not funded in previous budgets." Id. at 283. We also emphasized that the exception encompassed only new expenditures which local authorities had no discretion to limit. Id. at 283.
The Teamsters and AFSCME awards here at issue do not require Atlantic City to engage in a new activity or provide a new service, the costs of which were not reflected in pre-1977 budgets. Appropriations to defray the payroll costs of white and blue collar workers have appeared in the City's budget for years. The IAFF and Teamsters awards merely set the terms and conditions of employment for municipal personnel engaging in the same functions that were engaged in by their predecessors long before the Cap Law's enactment.
Moreover, these awards will not necessarily compel the City to increase its overall blue or white collar "expenditures." Municipal officials retain discretion to diminish the size of the work force and limit the areas in which personnel will be deployed, inasmuch as these decisions "unquestionably [are] predominantly managerial function[s]" which cannot be delegated to an arbitrator not accountable to the public at large. State v. State Supervisory Employees Ass'n, 78 N.J. 54, 88 (1978); see Irvington PBA, supra, 80 N.J. at 288-289. The arbitral decisions merely establish the level of benefits to be accorded those individuals whom the City wishes to hire or retain. As such, the amount of "expenditures" which must be incurred to implement the awards are within the municipality's control.
Finally, it should be noted that the Teamsters and AFSCME disputes were voluntarily submitted to binding arbitration. The City was under no compulsion to agree to abide by the arbitrator's determination. Consequently, the *268 costs to be incurred in implementing those awards cannot be characterized as expenses "mandated * * * pursuant to State * * * law," N.J.S.A. 40A:4-45.3(g) (emphasis supplied).
We therefore hold that the expenses to be incurred by Atlantic City in financing the AFSCME and Teamsters awards do not fall within the ambit of N.J.S.A. 40A:4-45.3(g).

IV
None of the parties has questioned the validity of the trial court's confirmation of the four arbitral awards which form the basis of the present suit. Nor have they provided us with the data necessary for a meaningful review of the judge's decisions in this regard. Consequently, we express no view as to the correctness of the judge's confirmations insofar as the PBA, IAFF and Teamsters awards are concerned. As a result, these three arbitral awards stand confirmed inasmuch as none of the parties appealed the trial judge's confirmations with 45 days of entry of final judgment. R. 2:4-1(a).
The AFSCME confirmation, however, stands upon a different footing. AFSCME was never joined as a party to this action. As such, the trial judge was without jurisdiction to enter an order adjudicating its rights and obligations. See, e.g., Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We therefore vacate his confirmation of the AFSCME award.[2]
We also wish to note several additional points. In compulsory arbitration settings, the arbitrator is bound by statute to take account of a municipality's Cap Law constraints *269 prior to the rendition of an award. See N.J.S.A. 34:13A-16(g) (1), (5), (6); Irvington PBA, supra, 80 N.J. at 293. In our view, the constitutional prohibition of undue delegations of legislative authority mandates that this factor also be considered where arbitral proceedings have been voluntarily initiated by the parties.
In Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978), we noted that
* * * [t]o be constitutionally sustainable, a delegation must be narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally.
[78 N.J. at 164 (emphasis supplied)]
See Division 540, Amalgamated Transit Union v. Mercer County Improvement Auth., 76 N.J. 245, 252 (1978). By permitting local authorities to submit negotiation impasses to binding interest arbitration, see N.J.S.A. 34:13A-7, the Legislature has in effect allowed municipalities to delegate to an arbitrator the power to fix the terms and conditions of employment of local government workers. Were the arbitrator free to ignore the municipality's Cap Law constraints in rendering a decision, serious damage to the "public good" might ensue. An exceedingly high award would force the municipality to lay off large numbers of employees or in other ways necessitate drastic cutbacks in services  moves which would undoubtedly cause hardships to municipal residents. See Irvington PBA, supra, 80 N.J. at 293.
Therefore, an arbitrator must consider a town's Cap situation prior to the rendition of an award. Should he fail to do so, that award would be subject to vacation on grounds of procurement by "undue means." N.J.S.A. 2A:24-8(a).

V
As we noted in Irvington PBA, supra, the manner in which Atlantic City will comply with the arbitral awards *270 without exceeding Cap Law limits is a matter which we have no authority to decree. See 80 N.J. at 296. Municipal officials must determine whether, and to what extent, personnel should be laid off, or whether budgetary appropriations for non-payroll costs should be reduced. Alternatively, they can seek Director or Board approval of an emergency appropriation to defray the costs of the awards. See N.J.S.A. 40A:4-46 et seq; Irvington PBA, 80 N.J. at 298.
We realize that whatever method is utilized to cope with the City's fiscal problem, the City's residents may suffer certain hardships in the form of reduced municipal services. Whether those hardships will be sufficiently severe as to render invalid the arbitral decisions is a matter upon which we are not in a position to rule. None of the parties to this action has appealed the trial court's judgment confirming the PBA, Teamsters and IAFF awards. Nor have we been provided with the data necessary for a sua sponte review of the arbitral determinations. Consequently, we cannot assess the propriety of those awards in light of the fiscal problems with which the City is confronted.
We also note that municipalities have been placed in a fiscal trilemma. Local governments have been simultaneously directed to provide basic municipal services, limit increases in the property tax and respect the rights of public employees. Under existing circumstances, the attainment of each of these goals is, at best, difficult.
As we emphasized in Irvington PBA, supra, "[i]n a world plagued by double-digit inflation, some group will likely suffer if municipal appropriations can increase each year by at most 5%." Irvington PBA, supra, 80 N.J. at 297. We must presume that the Legislature was aware of this consequence when it enacted the Cap Law. It is for that body to determine whether the Cap Law requires modification.
We, however, must rule in accordance with existing law. Accordingly, except as relating to the confirmation of the PBA, IAFF and Teamsters arbitration awards, the judgment of the trial court is reversed.
*271 For reversal  Justices MOUNTAIN, PASHMAN, CLIFFORD and SCHREIBER and Judge HALPERN  5.
For affirmance  None.
NOTES
[1] Similarly, should the Director render an interpretation of the Cap Law's provisions during proceedings relating to approval of a budget, the proper course for a municipality whose budget is disapproved is to appeal the Director's determination to the Board. Only after the Board has finally disposed of the entire matter should judicial review be sought in the Appellate Division.
[2] We emphasize that we are not vacating the arbitrator's award in the AFSCME dispute. We merely vacate the judgment confirming that award. Since more than 3 months have already elapsed from the time the AFSCME award was rendered, the City is now precluded from moving for its vacation. N.J.S.A. 2A:24-7.