727 A.2d 71 (1999)
320 N.J. Super. 281
SOUTH PLAINFIELD BOARD OF EDUCATION, Plaintiff-Respondent,
v.
SOUTH PLAINFIELD EDUCATION ASSOCIATION, on behalf of Michael ENGLISH, Donna Timko, Joy Czaplinski, Katherine Maher, Sharon Frank, and Eugene Clapsis, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1998.
Decided April 13, 1999.
*72 Stephen E. Klausner, Somerville, for defendants-appellants (Klausner & Hunter, attorneys; Mr. Klausner, of counsel and on the brief).
Nicholas Celso, Florham Park, for plaintiff-respondent (Schwartz Simon Edelstein Celso & Kessler, attorneys; Mr. Celso, of counsel; Mr. Celso and Marc H. Zitomer, on the brief).
Before Judges KESTIN, WEFING and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.A.D.
Plaintiff and defendant submitted to contractual grievance arbitration. The arbitrable issues presented required the arbitrator to determine whether there was a violation of the agreement and, if so, to fashion an appropriate remedy. While she answered the first question in the affirmative, the arbitrator failed to determine a remedy. During the arbitration hearing, when references were made to the fiscal impact of a decision adverse to plaintiff, the arbitrator suggested that she would not consider the fiscal impact of an award. Following the award, plaintiff successfully brought an action to vacate the award. The Chancery Division concluded that the award was "imperfect" under N.J.S.A. 2A:24-8(d).
This appeal of the vacatur of the public sector arbitration award requires us to consider a) whether an arbitrator in a public sector contractual grievance arbitration may consider the fiscal impact of an award in fixing an appropriate remedy, and b) whether a court reviewing an arbitration award should vacate that portion of the award finding that there was a contract violation when the award is "imperfect" under N.J.S.A. 2A:24-8(d) because it does not completely dispose of all the issues raised in the arbitration. Implicit in the description of the issues presented is the fact that the award, in part, adjudicated the violation of the contract while *73 leaving for future determination the issue of remedy. We conclude that the arbitrator may consider fiscal impact of an award in fashioning a remedy but the determination of the arbitrator that the contract was violated should have been affirmed.
The issues arise in the following factual context. In December 1995, defendant South Plainfield Education Association (SPEA) filed a grievance "on behalf of all affected teachers" against plaintiff South Plainfield Board of Education (the Board) alleging violations of the initial salary placement provisions of their negotiated agreement. The grievance focused on the allegation that certain teachers, at the time of their initial hire, did not receive the full or correct credit for previous outside teaching experience. The Board rejected the grievance, asserting that the initial placement was a matter of "management prerogative."
The relevant sections of Article XIX Section B of the parties' agreement provide:
6. Each Teacher shall be placed on his proper step of the salary schedule. Provided that the requirements dictated by the professional standards for his position have been successfully met [sic]. Such placement will be in accordance with paragraph seven (7) below.
7. Credit up to the highest step of any salary level on the Teacher Salary Schedule shall be given for previous outside teaching experience in a duly accredited school upon employment in accordance with the provisions of Schedule A, B or C. Credit not to exceed four (4) years for military experience may be granted; however, the total prior service shall not exceed the highest step of any salary level.
The matter proceeded to arbitration with the specific issue identified as follows: "Did the Board of Education violate Article XIX Section B, items 6 and 7? If so, what shall be the remedy?" The arbitrator answered the first question in the affirmative and required the parties to submit to further hearings. The arbitrator noted that all but one of SPEA's witnesses were credited with fewer than their years of prior experience on the salary guide. Further, the ninety-two teachers hired from the 1990-91 through 1995-96 school years received varying amounts of credit for previous experience, ranging from full credit to no credit. Only twenty of these teachers received full credit.
As part of her award, the arbitrator ordered the Board to review the records of the affected teachers, determine the number of years they taught in accredited schools and place them on the appropriate step for the 1995-96 school year. The placements would impact on future salary as well. Further, the Board was required to compensate the affected teachers retroactively [1] and to properly credit all future hires.
Following the arbitration, the Board filed a complaint in the Chancery Division to vacate the arbitration award. The trial judge ordered a plenary hearing. At the hearing, the Board asserted that the economic impact of the potential award had not been addressed during the arbitration hearing. The judge determined that despite the rising public concern over education budgets, it was not incumbent upon him to determine whether the arbitrator's failure to consider the potentially catastrophic effect of the award was critical. Also at the hearing, both parties conceded that the Board and SPEA reached different conclusions on the proper credits various individual teachers were entitled to and that the arbitrator failed to make specific findings as to any of the individuals.
The judge vacated the award in its entirety. He concluded that the "fatal flaw" of the award was its total lack of precision. Specifically, the award failed to name the "amorphous, unidentified group of teachers" involved in the arbitration and did not "make one single definitive determination as to what teacher was improperly credited and what the proper credit was and what the increment or differential to be awarded was." He determined that the parties still did not agree on the amount of the award following the arbitration. Since the award required further findings of fact by a factfinder outside of the arbitration proceeding, the judge concluded that the arbitrator had imperfectly executed her powers, and there was no final *74 and definite award. Finally, he determined that total vacatur of the award, rather than remand, was the appropriate disposition.
We determine and hold that an arbitrator may consider the fiscal impact of an award in a public sector grievance arbitration in fashioning an appropriate remedy. We further conclude that the determination that there was a contract violation should not be vacated.
I.
We commence our analysis by again recognizing that arbitration is a favored remedy and is commonly utilized to settle labor disputes. Office of Employee Relations v. Communications Workers of America, 154 N.J. 98, 111, 711 A.2d 300 (1998) (Communications Workers). But, arbitration is favored when it resolves the labor dispute, not when it serves as a "way-station on route to the courthouse." Ibid.
The scope of judicial review of an arbitration award is quite limited. Ibid.; Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 356-57, 640 A.2d 788 (1994). In the private sector, voluntary arbitration awards "may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specially defined mistakes set forth in [N.J.S.A. 2A:24-9]." Id. at 358, 640 A.2d 788.
Public sector arbitration awards, however, are subject to broader standards of review than are private labor disputes. See Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 431, 672 A.2d 1132 (1996) (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 405 A.2d 393 (1979) (Kearny)); City Ass'n of Supervisors and Adm'rs v. State Operated School Dist., 311 N.J.Super. 300, 309, 709 A.2d 1328 (App.Div. 1998). With regard to matters of contract interpretation, courts will generally accept an arbitrator's interpretation as long as it is reasonably debatable. Communications Workers, supra, 154 N.J. at 112, 711 A.2d 300; Department of Law and Pub. Safety v. State Troopers Fraternal Ass'n, 91 N.J. 464, 469, 453 A.2d 176 (1982). In addition to determining whether the contractual interpretation is reasonably debatable, a court reviewing an arbitrator's interpretation of a public sector contract must also consider whether the award violates the law or public policy. Communications Workers, supra, 154 N.J. at 112, 711 A.2d 300; Kearny, supra, 81 N.J. at 221, 405 A.2d 393. As a result, "[t]he parties in a public employment case cannot clothe the arbitrator with unbridled discretion, `for public policy demands that inherent in the arbitrator's guidelines are the public interest, welfare and other pertinent statutory criteria.'" New Jersey Turnpike Auth. v. New Jersey Turnpike Supervisors Ass'n, 143 N.J. 185, 198, 670 A.2d 1 (1996) (citation omitted); Kearny, supra, 81 N.J. at 217, 405 A.2d 393 (noting that in public employment grievance and interest arbitration, arbitrator's determinations "are subject to pertinent statutory criteria as well as public interest and welfare").
Public sector arbitration includes both interest and grievance arbitration. In New Jersey State Policemen's Benevolent Ass'n Local 29 v. Town of Irvington, 80 N.J. 271, 284, 403 A.2d 473 (1979) (Irvington), the Supreme Court described the differences between "interest" and "grievance" arbitration.
`Interest' arbitration ... involves the submission of a dispute concerning the terms of a new contract to an arbitrator, who selects those terms and thus in effect writes the parties' collective agreement. See Division 540, Amalgamated Transit Union v. Mercer County Improvement Auth., 76 N.J. 245, 249 [386 A.2d 1290] (1978). It is to be distinguished from "grievance" arbitration, which is a method of resolving differences concerning the interpretation, application, or violation of an already existing contract. See State v. State Supervisory Employees Ass'n, 78 N.J. 54, 393 A.2d 233 (1978); Township of West Windsor v. PERC, 78 N.J. 98 [393 A.2d 255] (1978).
The Legislature has, in some instances, imposed mandated criteria on arbitrators for resolving public sector disputes. For example, interest arbitration proceedings involving police and firemen require consideration of the impact of the award on the municipal *75 budget cap as well as the "interests and welfare of the public," N.J.S.A. 34:13A-16(g)(1). In Irvington, an interest arbitration case, the Court expanded the consideration of fiscal impact beyond the statutory mandate when it observed, "even absent the express enumeration of these ... factors, an arbitrator's consideration of a town's Cap situation is mandated by the constitutional proscription against undue delegations of legislative authority to private individuals." Irvington, supra, 80 N.J. at 293, 403 A.2d 473.
The primacy of fiscal consideration as an element of the public interest or welfare was simultaneously considered by the Court in City of Atlantic City v. Laezza, 80 N.J. 255, 403 A.2d 465 (1979), decided with Irvington, another interest arbitration case not involving a statutory mandate to consider fiscal impact. There, the Court defined "public good" in a labor arbitration context. In Laezza, two of the parties had voluntarily agreed to arbitrate, and, as a result, the compulsory arbitration statute, N.J.S.A. 34:13A-16, (and its mandate to consider the impact of the award) was not controlling. Laezza, supra, 80 N.J. at 268-69, 403 A.2d 465. Nevertheless, consistent with its decision in Irvington, the Court held that the constitutional prohibition on undue delegations of legislative authority still required the arbitrator to consider the municipal budget cap before rendering an award. Id. at 269, 403 A.2d 465. The Court reasoned:
Were the arbitrator free to ignore the municipality's Cap Law constraints in rendering a decision, serious damages to the "public good" might ensue. An exceedingly high award would force the municipality to lay off large numbers of employees or in other ways necessitate drastic cutbacks in servicesmoves which would undoubtedly cause hardships to municipal residents.
[Ibid.; see also Irvington, supra, 80 N.J. at 293, 403 A.2d 473.][2]
More significantly, the Court has recognized that consideration of the Cap Law and adherence to that statutory mandate is independent of consideration of the public good. "In the context of public employment an arbitrator's determinations in binding arbitration are subject to pertinent statutory criteria as well as the public interest and welfare." Kearny, supra, 81 N.J. at 217, 405 A.2d 393 (emphasis added). Finally, the Court concluded that if the arbitrator rendered an award without first considering its impact on the municipal budget cap, "that award would be subject to vacation on grounds of procurement by `undue means.'" Laezza, supra, 80 N.J. at 269, 403 A.2d 465.
While Laezza and Irvington are interest arbitration cases and are distinguishable on that basis, Kearny is a grievance arbitration case involving the interpretation of an existing contract. Despite the inherent differences between the two types of cases, the Court has abandoned the distinction. In Kearny, the Court observed that:
There is no meaningful distinction between interest and grievance arbitration, for in both situations a third person, not accountable to the public, is empowered to decide the issues presented. Grievance arbitration, which usually involves any disputes between the parties, including but not limited to interpretation of the contract, may also implicate the same standards and the public impact may be as significant as in an interest dispute.
[Kearny, supra, 81 N.J. at 217 n. 1, 405 A.2d 393.][3] *76 The public interest and welfare are relevant factors in all public sector arbitrations whether they be interest or grievance arbitrations, and may be considered where appropriate by the arbitrator in the decision-making process. We must, however, distinguish between interest and grievance arbitration when applying the public interest and welfare, more particularly, the fiscal impact of an award as an element of such public interest and welfare. We acknowledge, as did the Court, that interest and grievance arbitration are structurally identical and the public interest will be a factor in both types of arbitration. In the former instance, when crafting the terms of a contract, the public interest, including fiscal impact, will be most significant; in a grievance arbitration, while public interest may be relevant to the enforcement of contract provisions, it is of little relevance to a determination of what a contract means and what the parties intended in formulating the underlying agreement. See, e.g., New Jersey Highway Authority v. IFPTE, Local 193, 274 N.J.Super. 599, 644 A.2d 1140 (App.Div.1994) (concluding that the arbitrator's decision violated public policy in permitting reimbursement for accrued sick and vacation time of an employee terminated for stealing) and PBA Local 160 v. Township of North Brunswick, 272 N.J.Super. 467, 640 A.2d 341 (App.Div.1994) (holding that an arbitrator's decision failed to conform to the inherent guidelines applicable to public sector arbitration). After determining the meaning of a contract in a grievance arbitration case, however, consideration of public interest and welfare, including fiscal impact, expands in significance as a relevant consideration in fashioning an appropriate remedy.
The trilogy of decisions in Laezza, Irvington, and Kearny instruct us that even grievance arbitration issues must not be decided in a vacuum without consideration of their impact on the public good, interest and welfare as well as upon the grievant. This is particularly vital in a grievance arbitration not involving a single employee's contract complaint, but one assertedly pursued on behalf of scores of employees and addressing years of action or inaction allegedly violating the contract and potentially having substantial fiscal impact.
New Jersey's consideration of the public good in public sector arbitration has been recognized as unique.
The Steelworkers Trilogy[4] has taught that courts reviewing the merits of a labor dispute have no flexibility when asked to enforce an arbitration award. According to the United States Supreme Court, as long as an arbitration award draws its essence from the collective bargaining agreement of the parties, the decision is legitimate. This principle has not been accepted in New Jersey.
In Kearny PBA Local 21 v. Town of Kearny, the New Jersey Supreme Court decided the appropriate standard of judicial review for public sector arbitration awards. In a complex decision, the court upheld the arbitrator's award. The court concluded that an arbitrator's award can be vacated only when a statutory basis justifies such action. Absent such statutory grounds, the scope of judicial review in New Jersey is limited to determining whether the interpretation of the contractual language is reasonably debatable. Although an arbitrator's award in New Jersey is not easily set aside, the interest of the public must also be carefully considered.

In Town of Kearny, the majority of the court concluded that "there is no meaningful distinction between interest and grievance arbitration, since in both situations a third person, not accountable to the public, is empowered to decide the issues presented."
[Carlton J. Snow, The Steelworkers Trilogy in Oregon's Public Sector, 21 Willamette L.Rev. 445, 518-19 (1985) (emphasis added) (footnotes omitted).] *77 See also Gita D. Sargrad, Comment, 17 Rutgers L.J. 175, (1985) (noting that "[i]n public sector labor disputes an arbitrator must be guided by a consideration for the public interest and the impact of the award on the public welfare, as well as by the terms of the contract"). It is against this background that we consider the issues now before us.
The application of fiscal impact as an element of public interest and welfare is well demonstrated by its application in the matter before us. In her award, the arbitrator disregarded any financial impact of the award and stated, "[w]hile this Award may result in a substantial outlay for the Board, that is what the parties negotiated and therefore what this arbitrator must decide." That analysis was too sterile under the facts before her. The parties disagreed on the number of teachers involved in the grievance, the amount in dispute and the ultimate impact of the award. The Board argued before the court that staff and program reductions which would potentially "wreak havoc with continuity of service and instruction" would be required to absorb the fiscal impact of the full award. The Board plan specifically offered eleven possible points of reduction, all of which negatively impacted the children of the district. These areas of potential reduction were legitimate considerations for the arbitrator in fashioning a remedy for the breach of contract. Ultimately, the cost of the remedy must be borne by the public. The identification of the public good is not always a constant; the demands on government resources are sometimes not predictable. Here, the arbitrator was confronted with alleged grievable behavior that had extended over years, and yet the full impact was to be borne not by the public of the past but that of the present and future.
As was the case in Laezza, we, too, are especially concerned that the arbitrator's failure to consider the public employer's ability to finance the award could force the employer to cut services it provides, ultimately to the detriment of the public. We acknowledge that the grievance asserted a violation of the contract; however, the substantial length of time in issue as well as the numbers of employees involved demands fiscal consideration as a matter of public interest and welfare.
We need not define the parameters of public interest and welfare consideration except to note that where a decision may result in a bona fide claim of layoffs and service reduction, the arbitrator must factor in such concerns in fashioning a remedy that balances the rights of the grievants with the public interest and welfare. We expect that consideration of fiscal impact will be a matter of limited application and neither suggest nor hold that fiscal considerations will be relevant in every grievance arbitration. It is relevant here. It may be counterproductive to award substantial back salary credits over an extended number of years if that award reduces personnel and programs within the district. Any perceived unfairness to defendants arising from a diminished award on this account is due as much to their delay in raising their rights under the contract as to any other factor. Certainly the extent of the potential impact on current finances is a direct result of that delay.
The difficulty presented by this multi-claim grievance arbitration involving years of credits and an undetermined number of grievants is that the financial impact was not known to the arbitrator at the time of the arbitration, and her award provides no guidance in either quantifying the amount in dispute or recognizing the impact of an eventual award on the district and the public.
We conclude that the public interest includes fiscal impact and is a factor to be considered in a grievance arbitration when the ultimate award to be rendered may have substantial impact on the personnel and programs provided by the public entity, at least as to how the remedy may be administered.
II.
SPEA contends that the trial judge improperly vacated the arbitration award under N.J.S.A. 2A:24-8(d), asserting that the arbitrator's determination as to the contract violation should be upheld.
We have previously noted that the scope of judicial review for arbitration awards is limited. See Communications Workers, supra, *78 154 N.J. at 111, 711 A.2d 300. The Arbitration Act, N.J.S.A. 2A:24-1 to -11, defines the narrow circumstances under which a court may vacate an award:
[A] court shall vacate an arbitration award:
a. Where the award was procured by corruption, fraud or undue means;
b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
[N.J.S.A. 2A:24-8.]
See also Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 355, 640 A.2d 788 (1994) (quoting N.J.S.A. 2A:24-8).
There is no question that the parties presented to the arbitrator all of the information they considered pertinent to the issue of a contract violation; the arbitrator fully disposed of that issue by determining that the Board had violated the terms of its contract with the Association. The question of fiscal impact was, as the parties recognized at the time, irrelevant to determining the correct meaning of the contract.
Fiscal impact is an entirely appropriate consideration when constructing an appropriate remedy for a breach of contract. To set aside the entire arbitration award and require that the entire proceeding be conducted anew, is to give an unsuccessful party an unwarranted second chance on the issue of breach. Such a result is inappropriate in a matter such as this, in which the questions presented for arbitration can be clearly severed and separated, and the omitted material is irrelevant to the one question that has already been answered by the arbitrator. Further, according to the testimony before the trial court, it was the Board that suggested limiting the number of witnesses and the amount of testimony to be presented before the arbitrator. Because the actions of the Board contributed, at least in part, to an award that may be considered incomplete, it should not receive a further opportunity to obtain a different or more favorable result on a separate question that was fully decided. We view the issue of contract construction as not in any manner dependent on the issue of remedy, but rather, severable and sustainable on its own.
Having determined that the contract issue has been resolved and that the arbitrator should consider the fiscal impact of an award in fashioning a remedy, we must determine the appropriate procedural future of this dispute. SPEA argues that the matter should be remanded; the Board argues to the contrary. During the arbitration, the arbitrator suggested that she could not consider fiscal impact in making an award. Because we hold to the contrary and have defined the factors that an arbitrator should consider in determining a remedy in public sector grievance arbitration proceedings, we conclude that the appropriate resolution of this matter warrants a remand to the arbitrator for supplemental arbitration to resolve the issues remaining in dispute consistent with this opinion. This is the result we adopted in Jersey City Police Officers Benevolent Assoc. v. City of Jersey City, 257 N.J.Super. 6, 13, 607 A.2d 1314 (App.Div. 1992); it provides an opportunity for both parties and the arbitrator to fully explore and resolve the issues. The public interest and welfare, which we view as an integral part of and a consideration in this arbitration process, will be well-served by a full and fair exploration of all remedy related issues on the merits. Included among the issues to be addressed on the remand are the identification of the teachers affected by the contract violation, the time period covered by the award and a definition of, among other things, the term "accredited school."
Because the arbitration will continue and be subject to possible further proceedings in the event of an award, we need not address the other issues raised by the Board as to the insufficiencies of the prior arbitration *79 proceedings. We conclude that all such issues are best addressed after the entire proceeding is concluded and will be preserved for any future proceedings involving a review of the arbitration. By preserving those issues, we do not address or decide the argument raised by SPEC that such issues are not cognizable in this court.
We reverse the judgment of the Chancery Division vacating the arbitration award; the matter is remanded to the arbitrator for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The retroactivity was limited by the terms of the contract.
[2] The term "public good" was utilized in Ridgefield Park Education Ass'n. v. Ridgefield Park Board of Educ., 78 N.J. 144, 164, 393 A.2d 278 (1978), when the Court said:

[t]o be constitutionally sustainable, a delegation must be narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally. [Emphasis added.]
In the context of these decisions, we deem there to be no discernable difference between the "public good" and "public interest or welfare."
[3] In Justice Pashman's concurring opinion in Kearny, he disagrees with the majority's view that both grievance and interest arbitration involve the delegation of legislative power to a third party. He opines that the majority's "conclusion in this regard is simply incorrect." Kearny, supra, 81 N.J. at 229, n. 3, 405 A.2d 393 (Pashman, J. concurring). Our understanding that the majority viewed grievance arbitration as involving something more than a determination of a contract violation and remedy is supported by the acknowledgement that the grievance arbitrator's formulation of a remedy goes beyond the limited role expressed in the concurring opinion.
[4] United Steelworkers of America v. American Mfg., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).