748 A.2d 639

LARRY S. LOIGMAN, PLAINTIFF–APPELLANT, v. BOARD OF
CHOSEN FREEHOLDERS OF THE COUNTY OF MONMOUTH,
NEW JERSEY, DEFENDANT–RESPONDENT, AND ATTOR-
NEY GENERAL OF THE STATE OF NEW JERSEY, DEFEN-
DANT.

Superior Court of New Jersey
Appellate Division

Telephonically argued February 14, 2000—Decided April 12, 2000.

562

Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.

*Larry S. Loigman*, appellant, argued the cause pro se.

*Frederick P. Niemann* argued the cause for respondent (*Malcolm V. Carton*, Monmouth County Counsel, attorney; *Mr. Niemann*, Assistant Monmouth County Counsel, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

■ This appeal raises issues concerning the authority and reviewability of the decision of the governing body of a county, the Board of Chosen Freeholders, to indemnify a public employee, in this case, the Monmouth County Prosecutor, against whom punitive damages were awarded in federal jury trials in civil actions arising out of the performance of his duties. We hold that, absent extraordinary circumstances, the Board's action, authorized in *N.J.S.A.* 59:10-4, is a legislative decision to appropriate public funds for a lawful purpose and is not reviewable.

In a libel case brought against John A. Kaye (Kaye), Monmouth County Prosecutor, in the United States District Court, a jury returned a verdict against Kaye for $45,000 in compensatory damages and $55,000 in punitive damages, finding that Kaye had libeled a former assistant prosecutor in a newspaper interview. In a separate action against Kaye, also brought in the United States District Court, a jury returned a verdict in favor of a

county investigator, finding that she had suffered gender discrimination at the hands of Kaye. The jury verdict against Kaye was in the amount of $425,000, $50,000 of which was for punitive damages. The Monmouth County Board of Chosen Freeholders (the Board) agreed to indemnify Kaye for the full amount of both judgments.

Asserting taxpayer standing, on October 13, 1993, plaintiff, Larry S. Loigman, filed a complaint against defendants, the Board and the Attorney General of the State of New Jersey, alleging that public funds of Monmouth County (the County) were unlawfully being used to pay for the damage award ordered against Kaye in the libel action.

On October 25, 1994, approximately one year later, plaintiff filed an amended complaint alleging that county funds were unlawfully being used to pay the damage award ordered against Kaye in the discrimination action.

Thereafter, defendants filed motions for summary judgment. In a written opinion, dated March 31, 1998, the motion judge granted the Attorney General's motion for summary judgment, reasoning that the plaintiff has not pled or argued that the Attorney General must indemnify Kaye. The trial court denied the Board's motion for summary judgment, concluding that, with regard to indemnification for the damages arising from the libel suit, the resolution submitted by the Board did not meet the standards set forth in *N.J.S.A.* 59:10-4. The court further determined that the Board had failed to produce evidence of the adoption of a resolution authorizing indemnification for the damages arising out of the discrimination suit.

On May 22, 1998, the motion judge stated that the March 31, 1998 decision was incorrect in stating that the County had not submitted a resolution regarding the indemnification of Kaye for damages assessed in the discrimination case. The County had submitted a resolution, but it was not adopted by the Board until after the matter had been heard by the court on October 31, 1997.

On July 9, 1998, the Board adopted resolutions 98–560 and 98–561, amending the resolutions the motion judge had found insufficient to permit indemnification under *N.J.S.A.* 59:10–4. The amended resolutions were not discussed in executive session, but were introduced and adopted at the Board's meeting. On or about July 10, 1998, the Board filed a motion for summary judgment, asserting that the indemnification of Kaye was "authorized as a matter of law under *N.J.S.A.* 59:10–4[.]"

The motion judge found the amended resolutions legally sufficient to permit the indemnification of Kaye. The court granted summary judgment in favor of the Board and dismissed plaintiff's complaint with prejudice.

On appeal, plaintiff argues that the standards of the indemnification statute were not satisfied, that the OPMA was violated, requiring vacation of the Board's resolutions, and that discovery was improperly precluded. We now address each of plaintiff's arguments.

*I.*

Plaintiff asserts that the indemnification of Kaye is not permitted under *N.J.S.A.* 59:10–4. Plaintiff contends that "[i]mplicit in the jury's verdict was a finding that the damages were based upon actions constituting actual fraud, actual malice, willful misconduct, or an intentional wrong[.]" Plaintiff's argument derives from the fact that "[t]o be subject to liability for punitive damages, a defendant's conduct must be willfully and wantonly reckless or malicious." *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 610, 691 *A.*2d 350 (1997). Thus, plaintiff reasons the Board cannot indemnify without establishing a factual basis to overcome the findings made by the jury awarding punitive damages.

*N.J.S.A.* 59:10–4 provides, in pertinent part:

A local public entity may indemnify an employee of the local public entity for exemplary or punitive damages resulting from the employee's civil violation of State or federal law if, in the opinion of the governing body of the local public entity, the acts committed by the employee upon which the damages are based did

not constitute actual fraud, actual malice, willful misconduct or an intentional wrong.

The legislative history to *N.J.S.A.* 59:10-4 is not particularly illuminating. The statement to Assembly Bill No.2026, introduced on February 20, 1986, provides:

> Under the Tort Claims Act, if a judgment is obtained against a public employee as the result of an action based upon the performance of his duties, both the State and local public entities are empowered to indemnify the public employee for the amount of actual damages recovered. This bill would also permit the State and local public entities to indemnify a public employee for exemplary or punitive damages if the acts committed by the employee upon which the damages are based did not constitute fraud, malice, willful misconduct or an intentional wrong. Presently, the State and local public entities are not authorized to pay for punitive or exemplary damages.

The Senate Judiciary Committee reported favorably on Assembly Bill No.2026 and repeated the same statement to the Bill.

At the time the amendment was sought, *N.J.S.A.* 59:10-1 was also amended, affording the Attorney General the same authority to indemnify a State employee for exemplary or punitive damages resulting from the employee's civil violation of a State or federal law if, in the opinion of the Attorney General, the acts committed by the State employee upon which the damages were based did not constitute actual fraud, actual malice, willful misconduct, or an intentional wrong.

The Legislature conferred plenary authority on the local public entity to determine whether indemnification of a punitive damage award is appropriate under the circumstances. The key statutory language is "in the opinion of." We do not find the language chosen by the Legislature to be accidental, but rather, to reflect an acknowledgment that this decision, which implicates the appropriation of funds, should be insulated from examination absent extraordinary circumstances. The Legislature recognized that those who enter public employment should not have to fear that the performance of their duties will expose them to the risk of law suits with the potential of damages that could bankrupt the employee. If a high caliber of employee is to be attracted into the public sector, it is essential this type of protection be made

available. What that ultimately means is that the local public entity in appropriating these funds, is essentially rendering a legislative policy determination. Courts do not review such determinations because "they constitute[ ] a purely political decision and an exercise of governmental discretion." *Borough of Glassboro v. Byrne*, 141 *N.J.Super.* 19, 24, 357 A.2d 65 (App.Div.), *certif. denied,* 71 *N.J.* 518, 366 A.2d 674 (1976); *see also Loigman v. Trombadore,* 228 *N.J.Super.* 437, 442, 444, 550 A.2d 154 (App.Div. 1988). In matters within the discretion of municipal officers, we will not substitute our judgment for that of those to whom budget matters have been entrusted. *In re City Affairs Comm. of Jersey City,* 129 *N.J.L.* 589, 592, 30 A.2d 581 (Sup.Ct.1943). It is the voting public that provides the safeguard in this area.

To support his position that Kaye cannot be indemnified, plaintiff cites *Palmentieri v. City of Atlantic City,* 231 *N.J.Super.* 422, 440–41, 555 A.2d 752 (Law Div.1988), where the court stated,

If a cause of action for defamation is established and damages are assessed, it is clear that it would be impermissible for the city to indemnify [its employee] for those damages, because his actions would necessarily constitute willful misconduct. As such, [the employee's] conduct would therefore be beyond the city's common-law or statutory authority to indemnify.

Prior to the amendment of *N.J.S.A.* 59:10–4, effective December 24, 1987, local public entities were not permitted to indemnify their employees for punitive or exemplary damages. *See T & M Homes, Inc. v. Township of Pemberton,* 190 *N.J.Super.* 637, 639, 464 A.2d 1214 (Law Div.1983) ("*N.J.S.A.* 59:10–4 ... authorizes indemnification of 'local public employees consistent with the provisions of this act.' The Act ... expressly prohibits payment of punitive damages.") (citation omitted). *Palmentieri* was decided on June 15, 1988. *Palmentieri, supra,* 231 *N.J.Super.* at 422, 555 A.2d 752. Nonetheless, it appears as though the court relied on the pre-amendment version of *N.J.S.A.* 59:10–4 in reaching its decision. *Id.* at 430, 555 A.2d 752. Regardless of whether the Law Division applied the pre- or post-amendment version of the statute, however, the court's statement that it would be impermissible for a local public entity to indemnify its employee for

damages assessed in a defamation case because the employee's actions "would necessarily constitute willful misconduct[,]" *Id.* at 440, 555 *A.*2d 752, cannot be reconciled with the plain language of the statute as it now exists.

The amended resolutions were presented at a public meeting of the Board on July 9, 1998. Both resolutions provide detailed factual bases for the underlying actions and specific conclusions made by the Board in deciding to indemnify Kaye. The amended resolutions adopted by the Board provide a rational basis, in support of the Board's opinion, that the acts committed by Kaye upon which the damages were based "did not constitute actual fraud, actual malice, willful misconduct or an intentional wrong." While we conclude that the amended resolutions were not required by *N.J.S.A.* 59:10-4, they did provide an explanation for public consumption which promotes the objective of open government.

[At the court's direction, sections II and III of this opinion have been redacted for publication purposes.]

Affirmed.